# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| Westlake Pipe & Fittings Corporation, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. N23C-08-096 EMD CCLD |
| | ) |
| Geon Performance Solutions, LLC, | ) |
| | ) |
| Defendant. | ) |

Submitted: April 5, 2024
Decided: July 12, 2024

*Upon Consideration of Defendant's Motion to Dismiss*
***GRANTED***

Stephen B. Brauerman, Esquire, Emily L. Skaug, Esquire, Bayard, P.A., Wilmington, Delaware. *Attorneys for Plaintiff Westlake Pipe & Fittings Corporation.*

Joelle E. Polesky, Esquire, Stradley Ronon Stevens & Young, LLP, Wilmington, Delaware, Patrick K. Kingsley, Esquire, Stradley Ronon Stevens & Young, LLP, Philadelphia, Pennsylvania. *Attorneys for Defendant Geon Performance Solutions, LLC.*

**DAVIS, J.**

## I.     INTRODUCTION

This is a breach of contract action assigned to the Complex Commercial Litigation Division of this Court. Plaintiff Westlake Pipe & Fittings Corp. ("Westlake") filed the civil action in this Court on August 10, 2023. Westlake asserts claims relating to the Supply Agreement, effective on February 1, 2022. Westlake asserts breach of contract and implied covenant of good faith and fair dealing claims against Defendant Geon Performance Solutions, LLC ("Geon"). Geon moved to dismiss (the "Motion to Dismiss") Westlake's complaint on November 30, 2023. Westlake filed an opposition to the Motion to Dismiss. The Court held a

hearing on the Motion to Dismiss on April 5, 2024.  At the conclusion of the hearing, the Court took the Motion to Dismiss under advisement.

For the reasons set forth below, the Motion to Dismiss is **GRANTED**.

## II. BACKGROUND[1]

Geon is a Delaware limited liability company that processes, manufacturers, and sells engineered polymers, including polyvinyl chloride ("PVC").[2]  Westlake uses PVC compounds to manufacture PVC pipe and fittings.[3]  Westlake is based in Houston, Texas.[4]  On February 1, 2022, Geon entered into the Supply Agreement with Lasco Fittings, LLC ("Lasco").[5]  Westlake is the successor by merger to Lasco.[6]

The Supply Agreement provided that Geon sell to Lasco (now, Westlake) an annual minimum of 11.5 million pounds of PVC compound.[7]  The initial term of the Supply Agreement was from February 1, 2022 through January 31, 2023 (the "Initial Term").[8]  The Supply Agreement automatically renewed for the next three months "unless either party provided written notice of its desire not to renew . . . at least sixty (60) days prior to the end of the then-existing term" – *i.e.*, December 2, 2022.[9]

The Supply Agreement priced the PVC compound on a per-pound basis according to a pricing mechanism specified in Exhibit A of the Supply Agreement.[10]  Pricing adjustments

---

[1] The following facts are taken from the Complaint ("Compl.") and the documents incorporated by reference therein. *See Freedman v. Adams, 2012 WL 1345638*, at \*5 (Del. Ch. Mar. 30, 2012) ("When a plaintiff expressly refers to and heavily relies upon documents in her complaint, these documents are considered to be incorporated by reference into the complaint[.]" (citation omitted)).
[2] Compl. ¶ 9.
[3] *Id.* ¶ 8.
[4] *Id.*
[5] *Id.* ¶ 1; *id.*, Ex. 1 ("Supply Agreement").
[6] Compl., Ex. 11 at 1.
[7] Supply Agreement at 1.
[8] *Id.*
[9] *Id.*
[10] *Id.*, Ex. A.

would be made quarterly, beginning on April 1, 2022, and in accordance with a specific formula.[11] The starting price was $1.27 per pound.[12]

If Westlake purchased more than 11.5 million pounds of product, then Exhibit C to the Supply Agreement provided Westlake with a credit that could be applied to future purchases of similar product (the "Volume Incentive").[13] Importantly, (a) "[i]n no event will any credit be paid in cash; (b) Geon "will issue the credit in the quarter after it is earned;" and (c) the credit "must be used within sixty (60) days after it is issued."[14] The value of the credit was $.10 per pound of the product.[15]

In November 2022, Geon submitted a written notice of non-renewal.[16] Westlake had purchased approximately 11,532,167 pounds of PVC compound during the Initial Term.[17] Geon maintains that Westlake did not earn the credit until the termination of the Supply Agreement.[18]

Westlake contends it is entitled to a credit of $1,153,216.70 on purchase orders at pre-termination or market-based rates, notwithstanding that the Supply Agreement terminated before the issuance of the credit.[19] On February 15, 2023, Westlake submitted a purchase order to Geon for 740,000 pounds of PVC compound at $1.28 per pound.[20] Geon did not agree to a purchase order at Westlake's requested price of $1.28, stating that the "prior Contract ended on January

---

[11] *Id.*
[12] *Id.*
[13] *Id.* Ex. C.
[14] *Id.*
[15] *Id.*
[16] Compl. ¶ 13; Plaintiff's Answering Brief in Opposition to Defendant's Motion to Dismiss ("Opp."), Ex. A (D.I. No. 12).
[17] Compl. ¶¶ 16, 32.
[18] *Id.*
[19] *Id.* ¶ 16.
[20] *Id.* ¶ 17; *id.* Ex. 2.

31, 2023."[21]  Nonetheless, Geon indicated that it would accept a purchase order at $2.00 per pound, and that it would issue the credit for the Volume Incentive shortly thereafter. [22]

Finding Geon's marked-up price for a new purchase order unacceptable, Westlake initiated this action on August 10, 2023.  In its Complaint, Westlake alleges that Geon breached the Supply Agreement and an implied covenant of good faith and fair dealing.

On November 30, 2023, Geon filed Defendant Geon Performance Solutions, LLC's Opening Brief in Support of Motion to Dismiss.[23]  On February 9, 2024, Westlake filed Plaintiff's Answering Brief in Opposition to Defendant's Motion to Dismiss.  On March 5, 2024, Geon filed its reply in further support of the Motion to Dismiss.[24]  On April 5, 2024, the Court heard oral argument on the motion, after which it took the motion under advisement.

## III.    STANDARD OF REVIEW

Under Rule 12(b)(6), the Court (i) accepts as true all well-pled factual allegations in the complaint, (ii) credits vague allegations if they give the opposing party notice of the claim, and (iii) draws all reasonable inferences in favor of the plaintiffs.[25]  The motion to dismiss will be denied "unless the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances."[26]

## IV.    DISCUSSION

Delaware follows the objective theory of contracts, that is, how would an objective, reasonable third party interpret the contract.[27]  "In construing a contract, our goal is to give effect

---

[21] Compl., Ex. 5.
[22] *Id.*
[23] ("MTD") (D.I. No. 7).
[24] Defendant Geon Performance Solutions, LLC's Reply Brief in Further Support of Motion to Dismiss Plaintiff's Complaint ("Reply") (D.I. No. 15).
[25] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC*, 27 A.3d 531, 535 (Del. 2011).
[26] *Id.*
[27] *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159 (Del. 2010) (citation omitted).

to the intent of the parties."[28] "We will read a contract as a whole and we will give each provision and term effect, so as not to render any part of the contract mere surplusage."[29] "When the language of a contract is plain and unambiguous, binding effect should be given to its evident meaning."[30] A contract is ambiguous only if there are at least two differing, reasonable interpretations of it.[31] On a Rule 12(b)(6) motion, this Court "cannot choose between two differing reasonable interpretations of ambiguous provisions."[32]

## A. BREACH OF CONTRACT CLAIM

The elements of a breach of contract claims are (a) the existence of the contract, whether express or implied; (b) the breach of an obligation imposed by that contract; and (c) the resultant damage to the plaintiff.[33]

The Supply Agreement does not entitle Westlake to use its credit on post-termination purchase orders at pre-termination rates. Exhibit C to the Supply Agreement required Geon to "issue a credit to [Westlake] that can be applied to future purchases of like Product," if Westlake met the Volume Incentive amount during the Initial Term.[34] The credit could not be paid in cash, and Geon was required to "issue the credit in the quarter after it is earned."[35]

Westlake met the Volume Incentive amount during the Initial Term but did not earn the credit until the termination of the Supply Agreement.[36] Under the terms of the Supply Agreement, Westlake was entitled to a credit; however, the credit could only be used in the next quarter after it is earned, and on a purchase order whose terms the parties agreed to.

---

[28] *Weinberg v. Waystar, Inc.*, 294 A.3d 1039, 1044 (Del. 2023).
[29] *Osborn ex rel. Osborn*, 991 A.2d at 1159 (citation omitted).
[30] *Allied Cap. Corp. v. GC-Sun Hldgs., L.P.*, 910 A.2d 1020, 1030 (Del. Ch. 2006).
[31] *Twin City Fire Ins. Co. v. Delaware Racing Ass'n*, 840 A.2d 624, 628 (Del. 2003).
[32] *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 615 (Del. 2003).
[33] *Id.* at 612.
[34] Supply Agreement, Ex. C.
[35] *Id.*
[36] Compl. ¶¶ 16, 32.

5

The parties did not expressly or impliedly agree on the price for future purchase orders after the termination of the Supply Agreement. The Supply Agreement terminated on January 31, 2023, after Geon submitted a timely notice not to renew.[37] The Supply Agreement contains no language providing that, in the event the buyer hits the Volume Incentive amount in the last quarter and the Supply Agreement is not renewed, the seller is required to honor the credit on a purchase order at the rates provided for in the Supply Agreement.

By choosing to not renew the contract, Geon was free to enter into a new agreement at revised terms with Westlake. While Westlake could later apply the credit it earned during the Initial Term to future purchase orders, the termination of the Supply Agreement discharged Geon of any obligations to set the pricing terms at pre-termination rates. Thus, Geon was not obligated to sell the PVC compounds at pre-termination rates after the Supply Agreement terminated.

In opposition to Geon's Motion to Dismiss, Westlake argues that the terms of the Supply Agreement required that Geon enter into a post-termination purchase order at either the pricing term provided for under the Supply Agreement, a market-based rate or at a rate negotiated in good faith.[38] Westlake supports its argument by pointing to language in the Supply Agreement that requires Geon to "issue a credit to [Westlake] that can be applied to future purchases of like Product."[39] Westlake argues that this language requires Geon to provide a credit on future purchase orders according to the pricing formula in the Supply Agreement. The language does not specify that Geon must enter into future supply agreements or sales. Moreover, the language does not provide that Geon must agree to future sales at Westlake's requested rates in the event

---

[37] *See* Opp., Ex. A.
[37] Compl. ¶¶ 16, 32.
[38] Opp. at 10, 11, 13.
[39] Supply Agreement, Ex. C.

6

that the Supply Agreement terminates, and the credit is earned in the last quarter of the Initial Term.

Westlake's proffered interpretation would also upset the parties bargained-for termination rights. By submitting a timely notice to not renew, Geon terminated the Supply Agreement, which discharged it of any continuing obligations. No contractual obligation requires Geon to extend the terms of the Supply Agreement or enter into a post-termination purchase order at Westlake's desired terms.

For these reasons, the Court will dismiss Westlake's breach of contract claim.

## B. BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

The claim for breach of the implied covenant of good faith and fair dealing will also be dismissed. The implied covenant does not apply when "the subject at issue is expressly covered by the contract."[40] Even where the contract is silent, "[a]n interpreting court cannot use an implied covenant to re-write the agreement between the parties, and 'should be most chary about implying a contractual protection when the contract could easily have been drafted to expressly provide for it.'"[41] A party may not use the implied covenant of good faith and fair dealing to "rewrite [a] contract" that a party in retrospect "believes to have been a bad deal."[42]

The Supply Agreement provides that it will automatically renew for the next three months after the Initial Term unless a party submits a written notice of its intent to not renew. Geon submitted a timely notice of non-renewal, and the Supply Agreement conditions the use of any credit to the quarter immediately following the quarter in which the credit is received. Had

---

[40] *Dave Greytak Enters., Inc. v. Mazda Motors of Am., Inc.,* 622 A.2d 14, 23 (Del. Ch. 1992), *aff'd,* 609 A.2d 668 (Del. 1992).

[41] *Oxbow Carbon & Mins. Holdings, Inc. v. Crestview-Oxbow Acquisition, LLC,* 202 A.3d 482, 507 (Del. 2019) (citation omitted).

[42] *Allen v. El Paso Pipeline GP Co.*, 113 A.3d 167, 184 (Del. Ch.), *judgment entered,* (Del. Ch. 2014), *aff'd,* 2014, 2015 WL 803053 (Del. 2015).

Westlake intended to secure a future purchase order at a certain rate in the event that it met the Volume Incentive amount in the last quarter of the Initial term, it could have provided for that benefit in the contract. Instead, Westlake bargained for use of the credit on future purchase orders at the Supply Agreement's rates only if it hit the Volume Incentive Amount in the first, second or third quarter of the Initial Term. Westlake is not denied the full benefits of its bargain, but rather, is receiving what was bargained for, and cannot now use the implied covenant of good faith and fair dealing to rewrite a contract that it believes to be a "bad deal."[43]

## V.    CONCLUSION

For the reasons set forth above, the Motion to Dismiss is **GRANTED.**

Dated: July 12, 2024
Wilmington, Delaware

*/s/ Eric M. Davis*
Eric M. Davis, Judge

cc:    File&ServeXpress

---

[43] *Allen*, 113 A.3d at 184 (Del. Ch.).